******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

D'AURIA, J., with whom McDONALD and ECKER, Js., join, dissenting in part. In *State* v. *Purcell*, 331 Conn. 318, 203 A.3d 542 (2019), this court departed from federal constitutional law and unanimously held that, when the police are confronted with ambiguity in a suspect's invocation of his right to counsel during a custodial interrogation, our state constitution provides greater protection than its federal counterpart and demands that an interrogating officer either cease questioning the suspect altogether, or limit any further questioning to one subject: clarifying the suspect's statement and desire for counsel. See id., 321, 362. With today's decision, a majority of this court has broadened the scope of permissible responses to a suspect's equivocal request for counsel in a way that, in my view, allows an interrogator to defer and deflect a suspect's specific invocation of his right to counsel as long as the interrogator has ultimately repeated all of the *Miranda*[1] rights and secures a new written waiver.

In my view, the majority's holding departs significantly from—in fact dilutes—our very recent precedent in *Purcell*. As important, today's decision is antithetical to the policies that animate *Miranda* itself, policies intended to minimize opportunities for the police to take advantage of a suspect's custody—a status we recognize as inherently coercive, where often the suspect's only access to information is through the police officer conducting the interrogation. The majority's choice to justify the interrogating officer's response to the defendant, Miles Johnson, in the present case might sound academically satisfying. After all, the officer obtained a second signed *Miranda* waiver even after the suspect brought up (and arguably requested) the presence of counsel. But it is a choice that, in practice, makes room for skillful, tactical police work at a time—after an equivocal request for counsel—when our precedent says there should be room only for clarification. It is true that, after asking whether he could have a lawyer

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

present, the defendant in the present case, having been reread his *Miranda* rights and having executed a second written waiver, agreed to talk to the officer without the presence of counsel at the police station before being transported to court for arraignment. But he waived those rights laboring under the misapprehension that he *could not* have counsel present at the police station because the officer told him: "That's something that would happen over at court." I can find nothing in the majority opinion that addresses this reality or explains how the defendant's waiver could be knowing and intelligent when the only governmental representative he was dealing with provided this misinformation.

Because, in my view, the majority distorts the clear command of *Purcell* and weakens its protections, I respectfully dissent from part II of the majority opinion. Instead, I conclude that, because the interrogating officer failed to properly stop and clarify the defendant's equivocal request for counsel, as required by article first, §8, of the Connecticut constitution and *Purcell*, the trial court should have granted the defendant's motion to suppress evidence related to his September 24, 2020 interview. Because I also conclude that the state has failed to demonstrate that the trial court's error was harmless beyond a reasonable doubt, I would reverse the trial court's judgment and remand the case for a new trial. I do not reach the issues raised in parts I or III of the majority opinion and therefore respectfully dissent in part.

I

To protect individuals from "overzealous police practices," the United States Supreme Court held, in *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), a decision fixed firmly in our national consciousness, that, during a custodial interrogation and "[p]rior to any questioning," among other procedural safeguards that states must honor, an accused must be advised "that he has a right to the presence of an attorney, either retained or appointed." Id., 444. Although he

may choose—voluntarily, knowingly and intelligently—to waive this right, *Miranda* and its federal progeny demand that, if a suspect indicates "in any manner and at any stage of the process" that he wants to consult an attorney, there can be no more questioning until counsel is made available, unless the accused initiates further conversations with the police. Id., 444–45; see *Michigan* v. *Harvey*, 494 U.S. 344, 350, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990); see also *Edwards* v. *Arizona*, 451 U.S. 477, 484–85, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (once accused invokes right to counsel, interrogation must stop "until counsel has been made available to him, unless the accused himself initiates further communication" with police). In *Edwards* v. *Arizona*, supra, 485, the court held that questioning must cease when a suspect has "clearly asserted" his right to counsel, but, until the court decided *Davis* v. *United States*, 512 U.S. 452, 458–60, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), it had not described precisely how the police must treat ambiguous or equivocal requests for counsel.

Before *Davis*, lower courts were divided on how to treat equivocal requests for counsel during custodial interrogations. Courts had developed three distinct approaches: (1) immediate cessation of the interrogation, (2) continued interrogation until a sufficiently clear invocation is made, and (3) a stop and clarify approach, permitting questions limited to clarifying the suspect's intent. See *State* v. *Purcell*, supra, 331 Conn. 332; see also *Smith* v. *Illinois*, 469 U.S. 91, 96 n.3, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984). For more than one decade before *Davis*, Connecticut endorsed the third approach, holding that federal constitutional law required officers to stop and clarify an ambiguous request for counsel. See, e.g., *State* v. *Anderson*, 209 Conn. 622, 627–28, 553 A.2d 589 (1989); *State* v. *Barrett*, 205 Conn. 437, 448, 534 A.2d 219 (1987); *State* v. *Acquin*, 187 Conn. 647, 674–75, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); see also *United States* v. *Gotay*, 844 F.2d 971, 974–75 (2d Cir. 1988) (adopting clarification approach endorsed by several

other federal courts of appeals), overruled in part on other grounds by *Davis* v. *United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed.2d 362 (1994). "We reached this determination based on our conclusion that this rule was compelled under Supreme Court precedent." *State* v. *Purcell*, supra, 347.

In *Davis*, the United States Supreme Court tempered *Miranda*'s federal constitutional safeguards, holding that an interrogation must cease only following a unambiguous or unequivocal request for counsel. See *Davis* v. *United States*, supra, 512 U.S. 462 ("[m]aybe I should talk to a lawyer" was not an unambiguous request for counsel (internal quotation marks omitted)). We have recognized for decades that *Davis* constituted a change in the law, in that it "narrowed" *Miranda* "by holding that an accused's request for counsel under *Miranda* must be objectively unequivocal." *State* v. *Anonymous*, 240 Conn. 708, 720–21, 694 A.2d 766 (1997); see also *State* v. *Purcell*, supra, 331 Conn. 353 (characterizing *Davis* as a "change in the law").

In *State* v. *Purcell*, supra, 331 Conn. 341, we addressed a defendant's claim that our state constitution provided greater protection than the federal rule that has adhered since *Davis*. We articulated our disagreement with both the logic of the *Davis* standard and the "soundness of the policy rationale supporting" that five to four decision. Id., 351, 353. We reasoned that an "unequivocal" standard incorrectly assumes that individuals not only comprehend their *Miranda* rights and the effect of invoking them but also that they understand they must exercise them in a specific way. See id., 354–56; see also id., 355 (question of whether suspects understand *Miranda* rights is largely distinct from whether they know "the unequivocal manner in which they would have to exercise those rights to give them effect" (emphasis omitted)). We recognized that the *Davis* standard disadvantages more vulnerable individuals[2] who are less likely

[2]See *Davis* v. *United States*, supra, 512 U.S. 470 n.4 (Souter, J., concurring in the judgment) ("Social science confirms what common

to unambiguously invoke their rights and are most at risk of succumbing to coercive pressures against which *Miranda* was intended to protect. See id., 321, 356–57; see also id., 321 ("Connecticut constitution does not condone a rule that could disadvantage the most vulnerable of our citizens"). We explained that the *Davis* standard exacerbates the existing threat to *Miranda* protections posed by more subtle forms of psychological coercion and noted that, "[b]y permitting interrogation to continue in the face of an ambiguous invocation of the right to counsel, the police officers faced with such an invocation have [under *Davis*] been emboldened to employ a wide range of tactics designed to deflect suspects from clearly invoking their right to an attorney." Id., 360. Allowing officers to "to press forward with interrogation in the face of a statement that a suspect reasonably believes to be an invocation of his [*Miranda*] right to have counsel present"; id., 346;—but that does not match the precise phrasing that reviewing courts have deemed unequivocal—leads those in custody to reasonably infer that the rights they had been advised of are for some reason ineffective, or that the police do not intend to recognize them. See id., 360. Such an inference is likely to dissuade suspects from persisting in attempting to invoke guaranteed privileges. Id. We therefore concluded unanimously in *Purcell* that *Davis*' "'clear and unequivocal' standard"; id., 321; fails

---

sense would suggest, that individuals who feel intimidated or powerless are more likely to speak in equivocal or nonstandard terms when no ambiguity or equivocation is meant. See W. O'Barr, Linguistic Evidence: Language, Power, and Strategy in the Courtroom 61–71 (1982) . . . ."); see also S. Baker et al., "A Critical Discussion of Youth *Miranda* Waivers, Racial Inequity, and Proposed Policy Reforms," 29 Psych. Pub. Policy & L. 320, 326 (2023) ("Youth of color, who are more likely to be financially vulnerable than their White counterparts . . . may hesitate to assert their right to legal counsel because they (a) have not been informed that these services will be provided at no cost, (b) do not have the familial financial resources to secure an attorney, or (c) may have experienced or witnessed others (e.g., family members) receive a substantial bill for court-appointed counsel. . . . White youth whose families have the financial means to hire an attorney commonly have one intervene before interrogation can occur. On the contrary, youth of color often do not have families with the financial means or connections needed to hire an attorney privately and quickly following arrest.")).

to adequately safeguard a suspect's right to the advice of counsel during a custodial interrogation and indeed is antithetical to the purpose of *Miranda* warnings, which is to "show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it." (Internal quotation marks omitted.) Id., quoting *Miranda* v. *Arizona*, supra, 384 U.S. 468.

Our holding in *Purcell* is consistent with this state's time-honored recognition "that the due process concerns that operate at the intersection between the right to counsel and the privilege against self-incrimination may require greater protection than that afforded by the federal constitution under some circumstances" and of the significance of the right to counsel dating back to "before that right attained federal constitutional importance." (Internal quotation marks omitted.) *State* v. *Purcell*, supra, 331 Conn. 345. For example, this court has held that our state constitution forbids police interference with an individual's exercise of his right to counsel under circumstances that the federal constitution does not. See *State* v. *Stoddard*, 206 Conn. 157, 164–72, 537 A.2d 446 (1988) (declining to follow United States Supreme Court in *Moran* v. *Burbine*, 475 U.S. 412, 421–23, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986), in holding that due process clause of Connecticut constitution requires police to inform suspect of timely efforts by counsel to provide legal assistance). In *Purcell*, we joined several other jurisdictions[3] in declining to follow the *Davis* standard as a matter of our state's constitutional law, endorsing instead the "stop and clarify" approach that a majority of jurisdictions, including Connecticut, fol-

---

[3] See, e.g., *Steckel* v. *State*, 711 A.2d 5, 10–11 (Del. 1998); *State* v. *Hoey*, 77 Haw. 17, 36, 881 P.2d 504 (1994); *State* v. *Risk*, 598 N.W.2d 642, 648–49 (Minn. 1999); *Downey* v. *State*, 144 So. 3d 146, 151–52 (Miss. 2014); see also *State* v. *Chew*, 150 N.J. 30, 62–63, 695 A.2d 1301 (1997) (adopting stop and clarify approach based on New Jersey common law rather than constitutional privilege to protect accused's right to counsel and against self-incrimination) overruled in part on other grounds by *State* v. *Boretsky*, 186 N.J. 271, 894 A.2d 659 (2006)), cert. denied, 528 U.S. 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999).

lowed before *Davis*, which was designed to require that officers "dispel ambiguity and avoid guesswork as to the suspect's actual intent" without coercing or continuing to interrogate him. *State* v. *Purcell*, supra, 358.

Therefore, we held in *Purcell*, citing cases we decided before *Davis* under the federal constitution, that, under the Connecticut constitution, when a suspect makes a statement that can arguably be construed as a request for counsel, interrogators have two options. First, they may cease the interrogation, "except for narrow questions designed to clarify *the earlier statement and the suspect's desire for counsel*." (Emphasis added; internal quotation marks omitted.) Id., 362, quoting *State* v. *Anderson*, supra, 209 Conn. 628. Alternatively, interrogators may "inform the defendant that they understand his statement(s) to mean that he does not wish to speak with them without counsel present and that they will terminate the interrogation." *State* v. *Purcell*, supra, 331 Conn. 362. "In either case," the interrogation may resume only "if the defendant thereafter clearly and unequivocally expresses a desire to continue without counsel present . . . ." Id., citing *State* v. *Acquin*, supra, 187 Conn. 669–70.

## II

In my view, Detective Steven Brownell's response to the defendant in the present case failed to comply with *Purcell*, and not merely in a "technical" sense as the majority suggests. Rather, the undisputed facts of the present case provide an apt illustration of how, by failing to adhere to *Purcell*'s stop and clarify rule—and, in this case, by providing misinformation about how and when the suspect may exercise his right to counsel—an interrogating officer can deflect a suspect's requests for counsel and delay any invocation of that right, resulting in a waiver that is not knowing and intelligent. In my view, on this record, simply rereading the defendant his rights did not cure this breach of the *Purcell* rule because, objectively, Brownell's response left the defendant with the misconception that any continued discussion at the

police station would have to proceed without the presence of counsel.

Brownell first interviewed the defendant in the late evening of September 23, 2020, after Brownell had read, and the defendant had waived, his *Miranda* rights. At about 2 a.m. the next morning, the interview ended with the following exchange:

"[The Defendant]: Since I'm being arrested, sir, I doubt if an attorney makes any sense, but—

"[Brownell]: Okay. You are all done talking about it?

"[The Defendant]: I'm done talking, sir. Because I'm being arrested, sir."

The defendant was then arrested, taken into custody, and held overnight at the Waterbury police station. Later that morning, at about 8 a.m. on September 24, 2020, the defendant was in the holding area of the detective squad room, waiting to be transported to court for his arraignment later that morning. When the defendant saw Brownell, he motioned for him to come over and asked what was happening. Brownell told the defendant that he was going to court, at which point the defendant "indicated that he wished to speak to [Brownell] further." Brownell escorted the defendant to an interview room, where the defendant initiated the following discussion, which was captured on the police department's video recording equipment:

"[The Defendant]: I can't have a lawyer present, right?

"[Brownell]: Huh?

"[The Defendant]: Can I have a lawyer present, or no?"

At this point in the conversation, under our state constitution and our decision in *Purcell*, if the defendant's questions, reasonably construed, created any doubt that the defendant was requesting the presence of counsel,[4]

---

[4] The parties and the trial court apparently accepted that the questions the defendant posed to Brownell ("I can't have a lawyer present, right," and, "[c]an I have a lawyer present, or no") constituted an equivocal

the officer either had to stop and clarify the defendant's request with narrowly tailored questions or inform the defendant that he would treat his inquiry as an invocation of his right to counsel and terminate the interview. See *State* v. *Purcell*, supra, 331 Conn. 362. Brownell did neither. Instead, he responded, "[i]f you wanted a lawyer right now, it's going to happen when you go over to court, is what it boils down to, okay?" This was not only not "the best response," as the majority acknowledges, it was also factually inaccurate and legally insufficient.

An accurate answer to the defendant's question (which he repeated twice) would have included an affirmative, such as: "Yes, you have a right to have a lawyer present while we talk." The majority concedes this much. Brownell might have been laboring under the groundless (and mistaken) assumption that the defendant could not afford private counsel who might have been available to come to the police station without delay. Or, more generally, perhaps Brownell assumed (right or wrong) that a lawyer could not be summoned to the police station

request for counsel. The majority has also treated the defendant's request as equivocal. I do not find this assumption to be at all obvious, however, taking account of our observation in *Purcell* that many individuals, particularly those in certain suspect or quasi-suspect classes, commonly rely on indirect speech patterns "as a linguistic mechanism to avoid conflict." (Internal quotation marks omitted.) *State* v. *Purcell*, supra, 331 Conn. 357. Such "hedges in speech . . . may be used to convey either that the speaker is uncertain about the statement or that the speaker prefers not to confront the addressee with a bald assertion." Id. In my view, the defendant's direct, closed-ended question, posed to a detective who, in this interaction, personified the law and our state government, while the defendant sat in handcuffs, can just as easily be considered an unambiguous and unequivocal request for the presence of counsel during any further conversation, even one that the defendant initiated. That request was met with an incorrect answer: "If you wanted a lawyer right now, it's going to happen when you go over to court, is what it boils down to, okay?" Nevertheless, because I conclude that Brownell did not comply with *Purcell*, and that the trial court, on this record, should have suppressed statements the defendant made on September 24, 2020, I will eschew any scrupulous review of the factual record that might lead to a different conclusion about the clarity of the defendant's invocation of his right to counsel, and I, too, will assume that these questions constituted equivocal invocations of that right.

before the defendant's departure for his arraignment at court later that day. Whatever the source of Brownell's inaccurate and nonresponsive answer to the defendant's inquiry, a suspect's rights do not have to accommodate the officer's assumptions. To the contrary, in pursuit of *Miranda*'s purpose, which is to ensure that a suspect understands his rights before waiving them, the law demands that we focus on the rights of the accused, not the assumptions of the police, even if made in good faith. See, e.g., *State* v. *Stoddard*, supra, 206 Conn. 170 ("[t]he focus must be on the rights of the accused, not the innocence or culpability of the police" (internal quotation marks omitted)); see also *State* v. *Marsala*, 216 Conn. 150, 171, 579 A.2d 58 (1990) (exception to right to be free from unreasonable searches and seizures that accounts for good faith of police officers is incompatible with state constitution). This is precisely why, at this juncture, *Purcell* demands that the officer "avoid guesswork as to the suspect's actual intent" and ask narrow questions "designed to clarify" the suspect's desire for counsel, or assume the suspect has asked for counsel and not engage any further. (Internal quotation marks omitted.) *State* v. *Purcell*, supra, 331 Conn. 358, 362.

Instead, Brownell engaged in expert police work (if it passes constitutional muster with this court) by posing an open-ended invitation to the defendant: "When I came in, I saw you in the holding room there, and you said that you wanted to talk about something . . . ." The defendant's initial response did not manifest agreement that he wanted to talk with Brownell. Rather, he responded: "No, I was just asking." Brownell then continued to discuss the defendant's desire to keep talking[5] before

---

[5] "[Brownell]: So, to be crystal clear, when we ended last night, you said that you were done talking, okay?

"[Defendant]: Okay.

"[Brownell]: And, this morning, you said that there was something that you wanted to talk about, is that clear—I mean, is that fair?

"[Defendant]: That's fair, yeah.

"[Brownell]: What we have to do is, since last night you wanted to stop talking, this morning you want to talk again, I just got to go over the same rights again. It's the same thing as last night, okay?"

rereading the defendant the *Miranda* warnings and securing his signature on the waiver form again. After the defendant signed the waiver form, which included an explanation of his right to counsel, Brownell continued: "Okay. Do you understand those? I know you mentioned having an attorney when we first got here. Okay. *That's something that would happen over at court.* So, if you are not comfortable talking to me right now without an attorney, that's your choice. I understand that. But what you said you wanted to talk about something, okay?" (Emphasis added.)

Thus, both before and after readvising the defendant of his *Miranda* rights and securing a second written waiver, Brownell presented the defendant with a confusing and inaccurate false choice—he could have a lawyer, but only later, after he arrived at court. If he wanted to talk to the detective at the police station, it would have to be without a lawyer present. Under any objective standard, the conditional nature of Brownell's explanation would "dissuade [the defendant from] subsequent efforts to renew [his] privilege" to have counsel present prior to leaving for court. *State* v. *Purcell*, supra, 331 Conn. 360. At that point, the defendant agreed to submit to further questioning without counsel present. He did so for nearly one hour, stopping only when an attorney, who the defendant's mother had hired, called and directed Brownell to cease the interrogation. As I explain in part III of this opinion, I do not agree with the majority that Brownell's responses to the defendant's questions pass constitutional muster under the law of this state.

### III

Although the majority acknowledges some deficiency in Brownell's responses, it goes to great lengths to defend them because the majority "understand[s]" the detective's statements to be mere attempts to explain to the defendant the "practicalities" of the situation. Part II of the majority opinion. To the majority, Brownell's failure to advise the defendant that he was permitted to have an attorney present while submitting to any further

questioning before going to court is justified because it was "practically improbable" that counsel could be arranged before the defendant departed for court. I am not convinced that a failure to respond directly and accurately to the defendant's supposedly equivocal request for counsel can be so easily dismissed, or that Brownell's response here was simply an attempt to explain logistical constraints as opposed to skillful police work intended to keep the defendant talking, notwithstanding his expressed preference to do so with a lawyer present. The majority goes on to hold that any deficiency in Brownell's response was cured by his repetition of the defendant's *Miranda* rights "in their totality." Id. I disagree with both of the majority's conclusions and consider them to be inconsistent with, and indeed a retreat from, our holding in *Purcell.*

## A

First, on this record, I do not accept that the "practicalities" the majority describes—that the defendant "was waiting to be transported to court for his arraignment, where an attorney indeed would be appointed"; id.;—justified Brownell's inaccurate response to the defendant. *Miranda* requires that police advise a suspect "that he has a right to the presence of an attorney, either *retained* or appointed." (Emphasis added.) *Miranda* v. *Arizona*, supra, 384 U.S. 444. With its interpretation of Brownell's response as an attempt to explain the "current circumstances" to the defendant, the majority necessarily accepts and defends Brownell's assumption, without either scrutiny or supporting evidence, that the defendant was requesting *appointed* counsel, who could not have been summoned to the police station before the defendant's departure for court. Nothing in the record suggests nor did Brownell ask any clarifying questions that would justify the assumption, that, when the defendant asked, "[c]an I have a lawyer present, or no?," he must have meant, "when will I be appointed a lawyer?" In my view, as a matter of our state constitutional law, incorporating the presumptions and estimations of an

interrogator in response to an equivocal request for counsel is foreign to the purpose of clarification and therefore impermissible under *Purcell.* See, e.g., *Thompson* v. *Wainwright*, 601 F.2d 768, 772 (5th Cir. 1979), overruled in part on other grounds sub silentio by *Davis* v. *United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). Had the defendant been dressed in a suit and tie, or if any member of this court were to find themselves in the defendant's position, I doubt seriously that the courts of this state would accept either the presumption that they could not promptly summon an attorney to the police station or the officer's explanation that they would need to wait until their arraignment to have counsel appointed and therefore would have to speak without counsel present if they wanted to do so at the police station. *Miranda* rests on the "egalitarian premise" that all suspects are entitled to know their rights, not only the sophisticated or astute. *State* v. *Stoddard*, supra, 206 Conn. 169. Consequently, no individual in this state should be afforded any less protection or subjected to a different assumption simply because they do not understand that they must exercise their rights in a specific way to give them effect. In fact, Brownell's assumption proved to be incorrect in this case. Within one hour, while Brownell continued to question the defendant and while the defendant's transport to court apparently idled, belying any exigency, counsel hired by the defendant's mother succeeded in contacting Brownell to instruct him to cease the interview.

I acknowledge that, at times, in the pursuit of clarifying a suspect's request for counsel, it may be pertinent for an interrogating officer to include in his response an explanation of the logistics or practical consequences of invoking this right. Those explanations are often perilous, however, and interrogating officers must take care that they do not result in coercion or intimidation. See, e.g., *Thompson* v. *Wainwright*, supra, 601 F.2d 772 ("[b]ut even such explanations are perilous and, if given, must not be materially incorrect"). In many instances in which officers have attempted to explain the bureaucratic

complexities, logistics, or practicalities of invoking the right to counsel, courts have held that the explanations exceeded the bounds of proper clarification and crossed into obfuscation and coercive attempts to persuade the suspect to continue the interrogation. See, e.g., id. (police officer's indication that attorney would not let suspect tell police his side of story served to persuade suspect to talk to police rather than to discern meaning of suspect's statement); *Hampel* v. *State*, 706 P.2d 1173, 1182 (Alaska App. 1985) (interrogating officer's emphasis on delay and bureaucratic complexity of procuring counsel while focusing on evidence against suspect worked to persuade suspect to talk to police rather than to clarify ambiguous request for counsel).

In *Purcell* itself, the defendant made two equivocal requests for counsel: "See, if my lawyer was here . . . then . . . we could talk. That's, you know, that's it," and, "I'm supposed to have my lawyer here. You know that." (Internal quotation marks omitted.) *State* v. *Purcell*, supra, 331 Conn. 334. We held that the interrogating officer in that case had failed to seek proper clarification of the suspect's desire for counsel, violating the suspect's state constitutional rights, when the officer stated, among other things, "tomorrow, when you go into court, you're gonna look at a judge and a prosecutor. . . . And they're gonna look at all this stuff, all these allegations that were made against you." (Internal quotation marks omitted.) Id., 325. Similarly, in *State* v. *Culbreath*, 340 Conn. 167, 263 A.3d 350 (2021),[6] after reiterating the two options available to an interrogating officer following an equivocal request for counsel under *Purcell*, we held that, following the suspect's request for counsel; see id., 174 ("[i]s there anybody I can talk to .

---

[6] In *State* v. *Culbreath*, supra, 340 Conn. 191, 200, we held that an officer's failure to stop and clarify an equivocal request for counsel required suppression of any subsequent statements made by the defendant, warranting a reversal in part of the trial court's judgment, even though we issued our decision in *Purcell* after the defendant's trial concluded. Unlike the interrogation at issue in *Culbreath*, at the time of Brownell's interview with the defendant in the present case, *Purcell* had been the law of this state for nearly eighteen months.

. . [l]ike an attorney or something" (internal quotation marks omitted)); it was impermissible for the officers to indicate that, if the suspect decided to have an attorney present, the attorney probably would not let the suspect talk to the officers. Id., 186, 188. Although, as a practical matter, either of the officers' statements in *Purcell* or *Culbreath* might have been accurate under the circumstances, we held unanimously in both cases that they worked not to clarify whether the suspects wanted to have counsel present but instead as an attempt to convince the suspects that it was not in their best interests to terminate the interview.

Brownell's response to the defendant in the present case might have been innocuous had it been materially correct under the circumstances—if, for example, the defendant was exiting the police station for the transport vehicle, leaving no practical way to obtain an attorney prior to arriving at court. See, e.g., *Thompson* v. *Wainwright*, supra, 601 F.2d 772 (police officer's explanation to suspect of consequences of speaking to counsel may be proper, if correct). Although Brownell's response to the defendant's simple questions—("I can't have a lawyer present, right," and, "[c]an I have a lawyer present, or no")—was perhaps, on its face, not as egregious as the officers' statements in *Purcell* and *Culbreath*, on this record, it conveyed information based on an unsupported assumption that the defendant required appointed counsel who would not be available prior to his arraignment. It is this simple: what Brownell told the defendant about the availability of counsel was not true, or, at best, not necessarily true.

I am not convinced that Brownell's statements did not work to invoke the same inference in the defendant's mind that we have categorized as an attempt at persuasion rather than clarification—that, to obtain whatever benefit the defendant perceived in speaking with the detective, it might be in the defendant's best interest to continue to do so immediately, without the counsel who would be assigned at the courthouse. As in *Purcell*

and *Culbreath*, Brownell's responses were not limited to clarifying the defendant's desire to have counsel present, as *Purcell* and our state constitution demand, but focused on continuing the interview with the defendant. The majority's confidence that Brownell's response did not undermine the defendant's subsequent waiver of his rights is misplaced, in my view, and inconsistent with the policies that animate not only the required prophylaxis of *Purcell*, but that of *Miranda* itself: to counteract, rather than to manipulate, the inherently coercive nature of custodial interrogations by demonstrating that interrogators are prepared to recognize a suspect's constitutional rights should he choose to exercise them.

This is particularly true in the defendant's circumstance, given his lack of a prior criminal record. Often, we are quick to consider a suspect's previous exposure to the criminal justice system relevant when determining whether the suspect had knowingly and voluntarily waived his *Miranda* rights. See, e.g., *State* v. *Griffin*, 339 Conn. 631, 688, 262 A.3d 44 (2021) (suspect's experience with criminal justice system rendered him less susceptible to police coercion and suggested that he understood nature of *Miranda* rights and consequences of waiving them), cert. denied,   U.S.   , 142 S. Ct. 873, 211 L. Ed. 2d 575 (2022); *State* v. *Madera*, 210 Conn. 22, 45, 554 A.2d 263 (1989) (suspect's prior exposure to criminal justice system was relevant to his knowledge of *Miranda* rights and susceptibility to police coercion); cf. *State* v. *Brandon*, 345 Conn. 702, 743, 749, 287 A.3d 71 (2022) (probationer's experience and familiarity with probation office offset coercive atmosphere of that office, where probationer was interrogated, and weighed against finding of custody), cert. denied,   U.S.   , 143 S. Ct. 2669, 216 L. Ed. 2d 1242 (2023). Because the defendant in this case had no prior exposure to the criminal justice system, we cannot presume that he was able to distinguish between the practical and the substantive implications of Brownell's response. Rather, it was fair for the defendant to take at face value the explanation from the only representative of the government he had been exposed

to—that, "[i]f [he] wanted a lawyer right now, it's going to happen when [he] go[es] over to court, is what it boils down to"; he had no right to have a lawyer present at the police station. Moreover, to the uninitiated (and perhaps to many of the initiated), being arrested and transported to court, where the defendant will face a judge and be charged with murder, is likely to bear more than logistical or technical significance.

Ultimately, the practicalities of a suspect's circumstances do not relieve interrogators of their duty under our state constitution and our decision in *Purcell* to clarify a suspect's equivocal request for counsel, and to do so in a way that does not operate to confuse, delay or discourage the suspect from exercising that right. In this regard, I find persuasive the reasoning of the Supreme Court of Mississippi in *Downey* v. *State*, 144 So. 3d 146 (Miss. 2014).[7] In that case, an officer responded to an accused's equivocal request for counsel by stating that an attorney could not be brought to jail "right this minute" and asked the accused if she would like to speak without an attorney or wait. (Internal quotation marks omitted.) Id., 152. The accused, who previously had no desire to speak to the officer without counsel, then agreed to talk with the officer. Id. The court determined that the officer had exceeded the bounds of clarifying the accused's request by emphasizing the time and difficulty that would be involved in obtaining counsel and infringed on the accused's right to cease the interrogation, reasoning that the standard for providing counsel does not depend on the expediency with which counsel can be secured for the accused. See id., 153–54.

In the present case, the defendant at least equivocally indicated his desire to have counsel present by posing a yes or no question to Brownell. Rather than attempting to clarify the defendant's request, Brownell emphasized the logistical obstacles that would be involved in

---

[7] In *Franklin* v. *State*, 170 So. 3d 481, 489–91 (Miss. 2015) (plurality opinion), a plurality of the Mississippi Supreme Court endorsed the United States Supreme Court's decision in *Davis* but did not overrule *Downey* v. *State*, supra, 144 So. 3d 146.

obtaining counsel, potentially confusing the defendant and discouraging him from further attempting to invoke his rights, which did not depend on the practicalities of his circumstances.

B

Although the majority concedes that Brownell's response to the defendant's straightforward question was "not perfect" or "the best" explanation of the defendant's right to counsel, it dismisses any confusion Brownell created "[b]ecause he clarified the defendant's equivocal request for counsel by both reissuing the *Miranda* advisement and securing a signed wavier before conducting any further questioning . . . ." Part II of the majority opinion. I acknowledge that, under certain circumstances, re-reciting *Miranda* warnings and securing the suspect's signature anew on a waiver of rights form can play a part in clarifying a suspect's equivocal request for counsel, as required by *Purcell*. See, e.g., *Jackson* v. *State*, 299 So. 3d 823, 835 (Miss. App.) (repeating *Miranda* warnings was reasonable attempt to clarify when suspect made two conflicting statements regarding right to counsel), cert. denied, 300 So. 3d 43 (Miss. 2020); *State* v. *Honsch*, Docket No. CR-180292747-T, 2022 WL 3010884, *6 (Conn. Super. July 28, 2022) (reading *Miranda* warnings pertaining to counsel immediately after suspect asked, "is this the thing where I'm supposed to get a lawyer or something because of something," was reasonable attempt to clarify under *Purcell* whether he desired counsel (internal quotation marks omitted)), aff'd, 349 Conn. 783, 322 A.3d 1019 (2024). However, as several courts have held when applying the stop and clarify rule, repeating the *Miranda* rights will often be of no assistance in deciphering a suspect's intent to invoke his request for counsel. See, e.g., *Towne* v. *Dugger*, 899 F.2d 1104, 1110–11 (11th Cir. 1990) (repeating *Miranda* warnings was insufficient when officers did not seek to clarify suspect's equivocal request for counsel and instead made additional accusatory statements) overruled in part on other grounds sub silentio by

*Davis* v. *United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), (cert. denied, 498 U.S. 991, 111 S. Ct. 536, 112 L. Ed. 2d 546 (1990); *State* v. *Gray*, 2001 WL 1628306, *6–7 (Del. Super. March 13, 2001) (readministering *Miranda* warnings was insufficient to clarify when detective made negative comments designed to persuade suspect to keep talking); *State* v. *Chew*, 150 N.J. 30, 63, 695 A.2d 1301 (1997) ("[l]ater administration of *Miranda* warnings did not serve to clarify the earlier equivocal assertion of right to counsel") (overruled in part on other grounds by *State* v. *Boretsky*, 186 N.J. 271, 894 A.2d 659 (2006)), cert. denied, 528 U.S, 1052, 120 S. Ct. 593, 145 L. Ed. 2d 493 (1999). I believe this is such a case. Fundamental to our rationale in adopting a stop and clarify approach in *Purcell* was the recognition that "the question of whether suspects *understand* their *Miranda* rights is largely distinct from the question of whether they know the unequivocal manner in which they would have to *exercise* those rights to give them effect . . . ." (Emphasis in original.) *State* v. *Purcell*, supra, 331 Conn. 355. I therefore cannot conclude, as the majority does, that, by repeating what has become a "talismanic incantation" of the standard *Miranda* advisement, and securing a signed waiver, Brownell clarified the defendant's equivocal request for counsel, curing the effect of the objective misinformation provided to the defendant both before and after the recitation of the *Miranda* warnings. *California* v. *Prysock*, 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981). In my view, the majority's holding today weakens our holding in *Purcell* significantly, leaving proper police practice in the face of an equivocal request for counsel no more constrained than before that recent and seminal precedent.

Although Brownell might not have made additional accusatory statements as in *Towne* v. *Duggar*, supra, 899 F.2d 1107, in which the officer responded to the suspect's inquiry about a lawyer by listing potentially incriminating evidence the police had concerning the suspect and then repeating the *Miranda* warnings, or, as in *State* v. *Gray*, supra, 2001 WL 1628306, *6–7, in which the

police repeatedly urged the suspect to be honest and that telling the truth would benefit him before repeating his *Miranda* rights, the information that Brownell provided to the defendant was inaccurate, did not serve to clarify the defendant's request, and similarly undercut the defendant's attempts to exercise his right to counsel. After rereading the defendant his full *Miranda* warnings and securing a second written waiver of those rights, Brownell again emphasized that the defendant could not have an attorney present while talking to Brownell at the police station: "Do you understand those? I know you mentioned having an attorney when we first got here. Okay. *That's something that would happen over at court.*" (Emphasis added.) The reasonable interpretation of this statement is, "no, you cannot have an attorney if you want to talk with me now." To summarize, although it is true that Brownell then highlighted the defendant's right to have counsel present—"[s]o, if you are not comfortable talking to me right now without an attorney, that's your choice. I understand that"—he did so after telling the defendant repeatedly that he could *only* talk to Brownell without an attorney at the police station.

As we noted in *Purcell*, "the issue of whether a police officer can press forward with interrogation in the face of a statement that a suspect reasonably believes to be an invocation of his *Miranda* right to have counsel present is akin to the concern this court expressed in *Stoddard* regarding police interference with access to counsel." *State* v. *Purcell*, supra, 331 Conn. 347 n.18. In my view, by providing misinformation regarding when the defendant could exercise his right to counsel, Brownell, intentionally or not, did just that: interfered with the defendant's exercise of that right.

In *United States* v. *Vargas-Saenz*, 833 F. Supp. 2d 1262 (D. Or. 2011), in which a law enforcement officer responded to a suspect's equivocal request for counsel by stating that an attorney would not be appointed "for a day or two," the court held that the response did not serve to clarify the suspect's request, and that, although the

officers subsequently reread the *Miranda* warnings, the suspect became confused and, therefore, repeating the *Miranda* warnings was insufficient to clarify because the "damage was done." (Internal quotation marks omitted.) Id., 1265. In the present case, the majority concludes—with confidence, but without factual evidence or legal justification—that "Brownell's additional commentary did not undermine the effect of the defendant's waiver of his right to have an attorney present for the September 24 interview." Part II of the majority opinion. The majority also fails to acknowledge the heavy burden that rests on the government to prove that Brownell's commentary did not undermine that waiver, and that the defendant's subsequent waiver was made "knowingly and intelligently . . . ." *Miranda* v. *Arizona*, supra, 384 U.S. 475; id. ("[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel"). How can the state possibly meet this heavy burden when Brownell erroneously told the defendant that he simply could not have counsel present for any further discussion at the police station? The majority declines to say.

Under *Purcell*, in undertaking to clarify whether a suspect has requested counsel, an investigating officer's questions must be limited, properly administered, and narrowly designed only to discern the suspect's intent to exercise his right to have counsel present. See *State* v. *Purcell*, supra, 331 Conn. 360. Officers are not permitted to use this opportunity, directly or by innuendo, to comment, editorialize, or convey extraneous information that may have the effect of delaying, misleading, persuading or coercing the suspect into continuing the interrogation or dissuade him from invoking his right to counsel; the response must serve only to dispel ambiguity and to obtain an explicit and unequivocal assertion by the suspect as to whether he wants a lawyer prior to any further interrogation. *Purcell* demands that the officer

not engage further with the defendant unless and until that clarification is obtained. Id., 359–62; see also, e.g., *United States* v. *March*, 999 F.2d 456, 461–62 (10th Cir.) ("clarifying questions must be purely ministerial, not adversarial, and cannot be designed to influence the subject not to invoke his rights"), cert. denied, 510 U.S. 983, 114 S. Ct. 483, 126 L. Ed. 2d 434 (1993); *Parker* v. *Singletary*, 974 F.2d 1562, 1572–73 (11th Cir. 1992) (bounds of permissible clarification were exceeded when officers confused suspect in exercise of his rights rather than elucidated suspect's request); *Christopher* v. *Florida*, 824 F.2d 836, 842 (11th Cir. 1987) (clarification of suspect's intent to invoke right to remain silent does not permit questions that, "though clothed in the guise of clarification, are designed to, or operate to, delay, confuse, or burden the suspect in his assertion of his rights" (footnote omitted; internal quotation marks omitted)), cert. denied sub nom. *Dugger* v. *Christopher*, 484 U.S. 1077, 108 S. Ct. 1057, 98 L. Ed. 2d 1019 (1988); *Nash* v. *Estelle*, 597 F.2d 513, 517 (5th Cir.) ("interrogating officer may [not] utilize the guise of clarification as a subterfuge for coercion or intimidation"), cert. denied, 444 U.S. 981, 100 S. Ct. 485, 62 L. Ed. 2d 409 (1979).

With today's decision, a majority of this court now allows law enforcement to press forward with an interrogation of a suspect who, reasonably understood, sought to invoke his *Miranda* right to have counsel present for *any* custodial interrogation, so long as the officer establishes that the suspect has been read and purports to understand his *rights as a whole.* The majority justifies simply repeating the *Miranda* warnings as "reasonable and sufficient" to clarify an equivocal request for counsel under *Purcell* because the officer has sought to ensure that the suspect understands "*all of his rights*, including the right to counsel, before any interrogation commence[s]." (Emphasis added.) Part II of the majority opinion. The additional layer of prophylaxis that our state constitution requires, which we so recently and unanimously declared in *Purcell* demands greater precision, however—namely, that the officer clarify a

suspect's *desire to exercise* a particular one of those rights (his right to have counsel present) when he attempts to invoke it, if only equivocally. *Purcell*'s instruction to law enforcement is clear: officers must limit their statements following such an equivocal request to those designed to elucidate the defendant's *desire for counsel*, not statements that might serve to clarify the suspect's rights in general. *State* v. *Purcell*, supra, 331 Conn. 362. In my view, approving the readvisement of rights the defendant had heard before, but did not understand (as evidenced by his need to ask whether he could have a lawyer present at the police station), serves to embolden officers to engage in the very subtle and refined forms of coercion that threaten *Miranda*, against which our stop and clarify approach was intended to protect. See id., 359–60. In resolving to adopt the stop and clarify rule to protect individuals' state constitutional rights, we sought to advance the purpose of the *Miranda* warnings, which is to demonstrate to suspects that their interrogators are prepared to honor their right to counsel if they choose to exercise it. See id., 360. The majority claims that Brownell accomplished this goal, going so far as to assert that, despite the flaws in his initial response, "by readministering the *Miranda* warnings in their totality," he conveyed "precisely" what he would have accomplished if he had furnished the "best response"—"'yes, you may have counsel present during questioning.'" Part II of the majority opinion. I disagree that Brownell conveyed this critical, constitutional message. The effect of repeated warnings here, after the defendant had asked a yes or no question and was provided with an ambiguous and inaccurate answer, was anything but "precise." As a result, the answer to the defendant's question about his right to have counsel present was buried in the prophylactic *Miranda* package, which the defendant had already demonstrated that he did not fully understand by virtue of his questions to Brownell. The unhelpful repetition was then followed by repeating the inaccurate statement that, if the defendant chose to exercise his right to have counsel present, "[t]hat's something that would happen

over at court." This inaccuracy diminished any clarification that repeated *Miranda* warnings could possibly provide in these circumstances. In fact, it is lost on me how today's decision does not codify tactics of deflection, confusion, and delay as a best (or good enough) practice for officers attempting to keep suspects talking, as long as the officer repeats the standard *Miranda* warnings.

In my view, Brownell's repetition of the *Miranda* warnings was ineffective and insufficient to clarify the defendant's desire for counsel because the defendant was led to believe that he could not have a lawyer until he was in court. Allowing the repetition of *Miranda* warnings to suffice under these circumstances erodes the protection of *Miranda* and *Purcell* for the accused in Connecticut.

Because I conclude that the state has failed to demonstrate that the trial court's error was harmless beyond a reasonable doubt, I do not reach parts I or III of the majority opinion and would reverse the trial court's judgment and remand the case for a new trial.

Accordingly, I respectfully dissent as to part II of the majority opinion.